IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louis Alfonso Melendez,<br><br>          Petitioner,<br><br>     v.<br><br>Warden Greg Fizer,<br><br>          Respondent. | CV 05-891 PHX SMM (VAM)<br><br>REPORT AND RECOMMENDATION |

TO THE HONORABLE STEPHEN M. MCNAMEE, CHIEF U.S. DISTRICT JUDGE.

Louis Alfonso Melendez ("petitioner") filed a <u>pro se</u> Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Petitioner raises four grounds for relief. (Doc. 1 at pp. 4-5). Respondents filed an answer opposing the granting of habeas relief. (Doc. 11).

### I. BACKGROUND

The following background facts were summarized by the Arizona Court of Appeals on direct appeal and do not appear to be in dispute:

> [Petitioner] was the live-in boyfriend of Joanne C[oble]. On the morning of June 24, 1992, [petitioner] and Joanne rushed Anthony, Joanne's ten-month-old son, to the hospital after he started choking and turning blue. Anthony was resuscitated and placed in the intensive care unit where physicians diagnosed him as suffering from a life-threatening injury to the brain. He also exhibited numerous non-life-threatening injuries such as a second-degree burn on his right hand and fingers, a swollen forearm, and bruises on his head and ears. X-rays further revealed multiple fractures

> of various ages to his arms, legs, and ribs. Anthony's brain continued to swell after he was admitted to the hospital, which resulted in a significant, and ultimately fatal, increase in intercranial pressure. On June 25, the day after he arrived at the hospital, Anthony was pronounced brain-dead and removed from life support.
>
> The medical examiner determined that the brain injury was caused by Anthony having been violently shaken, a condition known as "shaken impact syndrome." When questioned by police, [petitioner] denied ever striking, shaking or otherwise abusing Anthony. He also denied ever observing anyone else abuse the child.
>
> The State charged [petitioner] with child abuse, a class two felony, and first-degree murder, a class one felony, under the felony murder doctrine. A jury convicted [petitioner] on both charges in 1994, but the convictions were reversed on appeal. [Citation omitted]. Upon retrial, a jury again found [petitioner] guilty as charged. [Petitioner] received life imprisonment with parole eligibility after thirty-five years on the murder charge and a consecutive twelve-year prison term on the child abuse charge.

(Doc. 1, Appendix B at pp. 2-3).

Petitioner appealed his convictions and sentences after the second trial. Petitioner raised the following claims:

> **Argument I**
>
> The Judge Erred by Granting the State's Request to Amend the Indictment by Expanding the Time Frame for the Alleged Offenses. The Amendment Resulted in the Loss of Double Jeopardy Protection, Denied Melendez a Fair Opportunity to Defend, it Violated His Right to Be Tried Solely on Charges Returned by the Grand Jury, and it Violated the Statute of Limitations as to the Child Abuse Count.
>
> **1.** The amendment resulted in the loss of the double jeopardy protection and denied Melendez fair notice of the charges and an opportunity to defend against them.
>
> **2.** By granting the motion to amend, the judge violated Melendez' right to be tried only on charges returned by the grand jury.
>
> **3.** The statute of limitations question as it relates to Child Abuse.

    **Argument II**

    The Judge Committed Reversible Error When He Commented on the Evidence by Giving Undue Prominence to Certain Evidence, Intimating that Certain Evidence was Entitled to Great Weight, and Calling into Question the Veracity of the Accused.

    **Argument III**

    Arizona Revised Statute § 13-116 Bars the Imposition of Consecutive Sentences in this Case.

    .....

(Doc. 1, Appendix A at pp. 9, 21, 28).

The Arizona Court of Appeals affirmed the convictions but modified the sentences for child abuse and murder to run concurrently not consecutively. (Doc. 1, Appendix B at pp. 8-11).

Petitioner next filed a petition for post-conviction relief pursuant to Ariz.R.Crim.P. 32.1 in the trial court. In his Rule 32 petition, petitioner raised the following claims:

    **1.** Ineffective Assistance of Trial Counsel because petitioner "only talked to his trial counsel three times before trial and was not given the opportunity to discuss witnesses to be called." As a result "there were witnesses from the 1994 trial who did not testify at the second trial .... Testimony of witnesses [from the first trial] not called in the [second] trial would have corroborated [petitioner's] statements to police that Anthony' injuries were not visible and he did not know that the child had been abused."

    **2.** Ineffective Assistance of Appellate Counsel "who did not raise an issue pursuant to <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986) ..."

(Doc. 1, Appendix C). The trial court denied both issues on the merits. (Doc. 1 at Appendix I; Minute Entry Order Dated December 19, 2002). The Arizona Court of Appeals denied the petition for review without comment. (<u>Id.</u> at Appendix E).

Petitioner filed a federal habeas corpus petition raising

essentially the same grounds presented to the Arizona Court of Appeals. (See Doc. 1, Appendix A at pp. 9, 21 and 28; see also Doc. 1, Memorandum in Support at pp. 7, 12 and 17).

## II. DISCUSSION

Respondent first asserts that each of petitioner's habeas claims are procedurally defaulted because petitioner failed to present them to the Arizona Supreme Court. (Doc. 11 at pp. 4-7).

**A. Anti-Terrorism and Effective Death Penalty Act of 1996**

Pursuant to 28 U.S.C. § 2254(d), the following standard for granting a federal habeas petition originating from a state court conviction applies:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable interpretation of the facts in light of the evidence presented in the State court proceedings.

The Act also codifies a presumption of correctness of state court findings of fact. 28 U.S.C. § 2254(e)(1) states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence." As discussed more fully below, these provisions of the Act set the standard for the Court's evaluation of the merits.

The Act limits the district court's discretion to hold

4

evidentiary hearings. 28 U.S.C. § 2254(e)(2) states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable; or
>
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

A petition may be denied on the merits even though it contains unexhausted claims, and the state does not waive exhaustion except by an express waiver on the record. 28 U.S.C. §2254(b)(2) and (3).

**B. Exhaustion and Procedural Default**

    1. Law Generally

A federal court has authority to review a federal constitutional claim presented by a state prisoner if available state remedies have been exhausted. Duckworth v. Serrano, 454 U.S. 1, 3 (1981)(per curiam); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). The exhaustion doctrine, first developed in case law and codified at 28 U.S.C. § 2254, now states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
>   (A) the applicant has exhausted the remedies

```
                available in the courts of the State; or

                    (B)(i) there is an absence of available state
                corrective process; or

                    (ii) circumstances exist that render such process
                ineffective to protect the rights of the applicant.

                                      .......

                   (c) An applicant shall not be deemed to have exhausted
                the remedies available in the courts of the State,
                within the meaning of this section, if he has the right
                under the law of the State to raise, by any available
                procedure, the question presented.
```

The exhaustion requirement can be satisfied in one of two ways. First, a petitioner can fairly present his or her claims to the Arizona Court of Appeals by properly pursuing them through either the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court. This is true even where alternative avenues of reviewing constitutional issues are still available in state court. Brown v. Easter, 68 F.3d 1209, 1211 (9th Cir. 1995); Turner v. Compoy, 827 F.2d 526, 528 (9th Cir. 1987), cert. denied, 489 U.S. 1059 (1989).

Claims presented in habeas petitions are considered exhausted if they have been ruled upon by the Arizona Court of Appeals. However, if the sentence received is life imprisonment, the claims must be presented to the Arizona Supreme Court. Swoopes, 196 F.3d at 1010. Although a federal habeas petitioner may reformulate somewhat the claims made in state court, Tamapua v. Shimoda, 796 F.2d 261, 262 (9th Cir. 1986), rev'd in part on

other grounds by <u>Duncan v. Henry</u>, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court. <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982)(per curiam); <u>Picard v. Connor</u>, 404 U.S. 270, 278 (1971). While the petitioner need not recite "book and verse on the federal constitution," <u>Picard</u>, 404 U.S. at 277-78 (quoting <u>Daugherty v. Gladden</u>, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." <u>Anderson</u>, 459 U.S. at 6.

As an alternative to presenting his claims to the highest state court, a petitioner can satisfy the exhaustion requirement by demonstrating that no state remedies remained available at the time the federal habeas petition was filed. <u>Engle v. Isaac</u>, 456 U.S. 107, 125 (n. 28)(1982); <u>White v. Lewis</u>, 874 F.2d 599, 602 (9th Cir. 1989). However, this path is fraught with danger:

> If state remedies are not available because the petitioner failed to comply with state procedures and thereby prevented the highest state court from reaching the merits of his claim, then a federal court may refuse to reach the merits of that claim as a matter of comity.

<u>Buffalo v. Sunn</u>, 854 F.2d 1158, 1163 (9th Cir. 1988); <u>see also</u> <u>Swoopes</u>, 196 F.3d at 1010 (determining that the exhaustion requirement is satisfied if a petitioner presented a claim to the Arizona Court of Appeals either on direct review or via a petition for post-conviction relief). This failure to comply with reasonable state procedures is usually characterized as "procedural default," "procedural bar," or a "waiver." As

7

discussed, exhausting state remedies by means of a procedural default is risky. The burden is on the petitioner to show that he or she has properly exhausted each claim. Dismissal of the petition is proper when the record does not show that the exhaustion requirement is met. Cartwright v. Cupp, 650 F.2d 1103, 1104 (9th Cir. 1981)(per curiam), cert. denied, 455 U.S. 1023 (1982). If the unavailability of state remedies is in no way the fault of the petitioner or his or her counsel, the exhaustion requirement will likely be satisfied and a federal court may reach the merits of the petitioner's habeas claims.

In many cases, however, the lack of available state remedies is a direct result of the petitioner's failure to avail himself of the state remedies in a timely or procedurally correct manner. In such instances, the petitioner has procedurally defaulted, and may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.[1] Reed v. Ross, 468 U.S. 1, 11 (1984); Wainwright v. Sykes, 433 U.S. 72, 90-91 (1977); see also Teague v. Lane, 489 U.S. 288, 298 (1989); Tacho v. Martinez, 862 F.2d 1376, 1380 (9th Cir. 1988). "Cause" is the legitimate excuse for the default. Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). "Prejudice" is actual harm resulting from the alleged constitutional violation. Id.

"Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the

---

[1] Appellate defaults are examined under the same standards that apply when a defendant fails to preserve a claim during trial. Smith v. Murray, 477 U.S. 527, 533 (1986).

term "cause" precise content.'" Harmon v. Barton, 894 F.2d 1268, 1274 (11th Cir.)(quoting Reed, 468 U.S. at 13), cert. denied, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, (citation omitted), or that "some interference by officials," (citation omitted), made compliance impracticable, would constitute cause under this standard.

Murray v. Carrier, 477 U.S. 478, 488 (1986); see also Harmon, 894 F.2d at 1275; Allen v. Risley, 817 F.2d 68, 69 (9th Cir. 1987). The standard is one of discretion intended to be flexible and yielding to exceptional circumstances. Hughes v. Idaho State Board of Corrections, 800 F.2d 905, 909 (9th Cir. 1986). The "cause and prejudice" standard is equally applicable to pro se litigants, Harmon, 894 F.2d at 1274; Hughes, 800 F.2d at 908, whether literate and assisted by "jailhouse lawyers," Tacho, 862 F.2d at 1381; illiterate and unaided, Hughes, 800 F.2d at 909, or non-English speaking. Vasquez v. Lockhart, 867 F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

Finally, if a claim has been found to be procedurally defaulted, the failure to establish cause for the default may be excused under exceptional circumstances. For instance:

> ... in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of showing cause for the procedural default.

Murray, 477 U.S. at 496; see also Schlup v. Delo, 513 U.S. 298,

1  327 (1995)(to meet the Murray standard, "the petitioner must show
2  that it is more likely than not that no reasonable juror would
3  have convicted him in the light of the new evidence").

4      2. Application of Law to Respondent's Claim of Procedural
5      Default

6      In O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the U.S.
7  Supreme Court held that in order to properly exhaust state court
8  remedies for purposes of federal habeas review, a petitioner is
9  required to file petitions for discretionary review in state
10 supreme courts "when that review is part of the ordinary appellate
11 review procedure in the State ..." O'Sullivan, 526 U.S. at 847.
12 The Court qualified this requirement by stating "nothing in our
13 decision today requires the exhaustion of any specific state
14 remedy when a State has provided that that remedy is unavailable."
15 Id.

16     Following upon on O'Sullivan, in Swoopes v. Sublett, 196
17 F.3d 1008 (9th Cir. 1999), the Ninth Circuit Court of Appeals held
18 that under Arizona law a habeas applicant need not seek review in
19 the Arizona Supreme Court to fully exhaust state remedies unless
20 the applicant has been sentenced to death or life in prison. For
21 state prisoners given sentences of less that death or life in
22 prison, appeal or post-conviction review by the Arizona Court of
23 Appeals is sufficient to exhaust federal habeas claims. See
24 Swoopes, 196 F.3d at 1010 ("except in habeas petitions in life-
25 sentence or capital cases, claims of Arizona state prisoners are
26 exhausted for purposed of federal habeas once the Arizona Court of
27 Appeals has ruled on them").

28

1    Respondents have raised a nonsensical argument that does not
2 apply to the facts of this case since petitioner was sentenced to
3 life imprisonment.  Specifically, respondents argue that Swoopes
4 was wrongly decided, particularly in light of the subsequent U.S.
5 Supreme Court decision in Baldwin v. Reese, 541 U.S. 27 (2004).
6 They contend that petitioner's failure to seek review of his
7 habeas claims in the Arizona Supreme Court either on direct appeal
8 or in a petition for post-conviction relief renders the claim
9 unexhausted and, ultimately, procedurally defaulted.  (See Doc. 11
10 at pp. 4-6).

11    Upon review, nothing in Baldwin either explicitly or
12 implicitly overrules the Ninth Circuit's holding in Swoopes.  In
13 fact, since Baldwin was decided the Ninth Circuit has reiterated
14 in at least one case that Swoopes remains good law.  See Castillo
15 v. McFadden, 399 F.3d 993, 998 (n. 3) (9th Cir. 2005).  Even if
16 the Court was convinced that Swoopes was wrongly decided, it has
17 no authority to overrule that decision.

18    Swoopes itself requires that review to the Arizona Supreme
19 Court remains "available" for prisoners sentenced to death *or* life
20 in prison.  See Swoopes, 196 F.3d at 1009 ("there is no right of
21 appeal to the Arizona Supreme Court except in capital cases *or*
22 *when a life sentence is imposed*" (emphasis added)).  In this case,
23 petitioner was sentenced to life in prison.  As a result, the
24 plain language in Swoopes requires petitioner to exhaust his
25 claims by seeking review in the Arizona Supreme Court.[2]   See

---

[2] Petitioner was sentenced to life in prison with eligibility
for parole after 35 years.  (Doc. 1, Appendix B at p. 3).  Nothing

1    <u>Swoopes</u>, 196 F.3d at 1009.

2      Petitioner, by his own acknowledgment, did not seek review
3    of any of the claims raised in his habeas petition in the Arizona
4    Supreme Court.  (See Doc. 1 at p. 2).  As a result, he did not
5    properly exhaust his habeas claims.  The time to present these
6    claims to the Arizona Supreme Court has long since passed.  As a
7    result, petitioner has no remaining state remedies and the claims
8    are technically exhausted.  Technical exhaustion is not proper
9    exhaustion and in the absence of cause for failing to present
10   these claims to the Arizona Supreme Court, the claims are
11   procedurally defaulted.  Petitioner has presented no cause for
12   failing to raise his claims in the Arizona Supreme Court.

13     In spite of the procedural default, the Court may address
14   the claims on the merits if petitioner can demonstrate that
15   extraordinary circumstances exist which will result in his
16   conviction although he is actually innocent.  Petitioner has made
17   no such showing.  As a result, petitioner's claims are
18   procedurally defaulted and should be denied.

19     **IT IS THEREFORE RECOMMENDED** that the Petition for Writ of
20   Habeas Corpus be denied.

21     This Report and Recommendation is not an order that is
22   immediately appealable to the Ninth Circuit Court of Appeals.  Any
23   notice of appeal filed pursuant to Rule 4(a)(1), Federal Rules of

---

25   in <u>Swoopes</u> makes distinctions between types of life sentences
     (e.g., life in prison with or without parole eligibility). <u>Swoopes</u>
26   merely states that those sentenced to death or life in prison
     should seek review before the Arizona Supreme Court to fully
27   exhaust available state remedies.  <u>Swoopes</u>, 196 F.3d at 1009.

28               12

Appellate Procedure, should not be filed until entry of the district court's order and judgment. The parties shall have ten (10) days from the date of service of this Report and Recommendation within which to file specific written objections with the Court. Thereafter, the parties have ten (10) days within which to file a response to the objections. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's Report and Recommendation.

DATED this 28th day of March, 2006.

_____
Virginia A. Mathis
United States Magistrate Judge